to the sixth case. United States v. Martin. Mr Ruth. Thank you. May it please the court. My name is Robert Ruth. I represent David Martin in this appeal. He is the defendant appellant. There are two principal issues that I want to bring to your attention today. And that is, was there plain air and was the air harmless? I think the question of plain air is answered by the district judge. After she imposed sentence, she issued an order acknowledging that she aired on multiple occasions. Now, curiously, she didn't note all of the instances of air, but she did acknowledge that she aired. Even without her acknowledgement of the air, it's pretty straightforward because we had a stipulation, a limited stipulation, to what facts are on the record for the revocation. And she made findings well beyond those facts. That's just, it doesn't get any plainer than that. As far as the harm of it, though, much trickier question. And I think that's where the government gets its best traction. It's puzzling how this unfolded. And I think that if you take the government's argument, basically the government's argument is this stuff doesn't matter. These things didn't matter. Now, the judge didn't say that, though. The judge actually said, if we take what she said at face value, she said, I am sentencing you to be held accountable for your violations. So she listed the violations, many of which were not in the record, or not proven in the record. And then she said, I'm sentencing you to hold you accountable for those violations. OK. So that, to me, that's, you know, she listed them. She held them accountable for them. There's air. I mean, it's harm. He was harmed by it. Where it gets trickier, though, is during the proceedings, one mistake, one of the mistakes that she made came to her attention. She made a finding of a violation of special condition number nine. And when the government brought that to her attention, just like that, she said, well, I'm not considering that. OK. I don't remember what her exact words were, but to that effect. Now, that, I think, on the one hand, you could say, well, see, it shows that she just wasn't considering all of these things. On the other hand, you could say that it kind of looked like she was trying to clean up the record and just say, well, I'm not considering that, when she had already stated it. All right, well, let's get past that one. Then she goes on, makes a bunch of factual findings, realizes that she made a mistake, and goes back and does this written order. The written order, if she wanted to say it was harmless, she had her chance in that written order. She could have said, I didn't consider any of this in the sentence. Now, I think that would have been suspect. When you have this many facts, then you say I wasn't considering it. But we're not at that point. She didn't say that. She said, I made them, these were errors. She said it was, now, where it gets a little murky is she said it was inadvertent. I'm not really sure what that means in this context. I suppose you could say, well, if it's inadvertent, it's just something that she didn't consider. But we're not talking about one thing or even two things. We're talking about 11 facts that she found that weren't supported by the record. So the fact that she described the errors that she acknowledged as inadvertent, that doesn't show that she didn't consider those facts in her sentence. Mr. Ruth, Mr. Martin, what's his current status? He is in prison. State prison? Yes. The last time I contacted him was about four weeks ago. He was in state prison. OK, and what we're talking about here is a 12-month federal sentence that will be consecutive to his state sentence, correct? And it's also correct that the government chose not to go after him on the distribution charge. Is that right? Well, I'm not sure I would phrase it that way. He was not prosecuted for distribution in the context of this case. Let's put it this way. There was some evidence available to the government of distribution during this period of months when he was supposed to be on supervised release when he was basically AWOL, right? Well, there's a reference in one of the reports that supposedly he said that he had distributed heroin on behalf of a local drug dealer. That sounds like evidence of distribution to me. Well, it is some evidence. I mean, if you believe it, and if it's corroborated, and if it's not impeached, I think, sure. Yeah, OK. And without any pursuit of a distribution, grade A violation claim, the district judge gave him a revocation sentence that was still well below the advisory guideline range, correct? Well, it was below both advisory guideline ranges, sure. Distribution would have been higher range. And he wants to be resentenced. Does he understand that if this were to go back, somebody else, either Judge Crabb could take a fresh look, some new violations could be brought into it, a different district judge could look at it, perhaps, and he could wind up with a stiffer sentence? I think he's capped at 24. Yes. Does he understand he could go from 12 to 24? Well, I mean, that was always a real possibility. We had that conversation with him? I honestly can't tell you all the specifics of the conversations, but we always understood that we faced up to 24. Well, it's 12 right now, right? It's 12. And the government didn't, there wasn't a specific allegation saying you made a grade A violation. But the judge made the finding that he did. I mean, she didn't say the finding makes that you violated, made a grade A violation. What's that do to hurt his feelings? I mean, this is, we're here. You already say, you're not even sure he's done with the state. I know, I'm quite certain he's not done with the state. All right, but then he gets 12 after that. Right. Unless this goes back and somebody gives him more. You know he's not going to get more. Or less. Well, you don't think he's going to get less than 12, do you, with this? Well, I asked for one to four, and I think that would be a fair sentence, considering the fact that he, for the same conduct, he got 20 from the state. We certainly don't want more, we want less. And that's, our goal is to get less. And I think that, I think that if the judge would have considered only the facts that were proven at this hearing, I think that he would have a good chance of getting less. All right, want to save a little time for rebuttal? I do, thank you. Thank you, Mr. Ruth. Miss, Ms. Duchemin. Thank you. May it please the court, my name is Meredith Duchemin, and I do represent the appellee in this criminal case, which is the United States. I do want to just bring one thing right away to the court's attention, because I think it's significant. And it is something that the government raised in its brief, but that the defendant didn't really address in either of its briefs. And that is a concession that the defendant really made mid-hearing regarding some of these administrative violations that are grade C violations, that some of them are at issue today. And you'll have to go to the supplemental appendix, because the portion of the transcript where this is contained is only in the supplemental appendix, not in the original appendix. And the pages are specifically six to seven in the supplemental appendix. And what happened was, I think the court is familiar with the entire transcript, but this is one where maybe the government was trying to be too pragmatic here, perhaps in hindsight, and maybe a more detailed stipulation would have been, both sides could have been more helpful to the court. Let me just put it that way. The court, Mr. Judge, goofed up a bit, OK? Yes. That's fair. Yes. There was confusion below. There's absolutely no doubt about that. And in fairness to the court, you've got a large number of violations. You've got 15 separate alleged violations spread over two different revocation petitions. You've got the fact that the parties reached stipulations right before the hearing. Then you've got partial stipulations. Then you've got stipulations that sort of evolved, which is the one I want to draw your attention to. So after, the judge always calls on the government to summarize, OK, where do we find ourselves? What's at issue? So I represent, OK, Judge, well, first we have this one petition with all these administrative violations. And then he absconds. And then he commits a felony while he's absconding. Certainly, that's the most serious thing. So during Mr. Ruth and I's conversations, what we did to try and help the court was to try and really streamline this process and get stipulations as to the most serious conduct for the court's consideration. So the court is being told right away, hey, we're trying to focus you here on the most serious things. But then as we're going through and identifying which stipulations are which, the court does try and circle back. And I think the court goes to special condition one, the fact that he was failing to provide financial information and says, why are you withdrawing that condition? And I said, we're withdrawing it. But in fairness, to the extent that he did abscond, he's also not following the administrative requirements during this period of time. He's not calling in. He's not filing monthly reports. He's not doing any of that stuff. And so some of these administrative violations are really subsumed in this larger violation that he left. And the court asked defense counsel if that was a fair statement. And defense counsel said, that's a fair statement. So I think the court sort of moved on from there, sort of thinking, hey, many of these smaller grade C violations are sort of subsumed in the later violations. Now in fairness, some of those she included as statements of error in her written order. And I think the judge was just, frankly, overcorrected herself. What she did was say, OK, anything he didn't stipulate to I really shouldn't have included, even though we really do have this partial concession to quite a few of these violations. So I just want to draw that to your attention. I think here it's really important to note that the confusion was over these grade C violations. There's no dispute in this case. The advisory guideline range was driven by the defendant's grade B violations. There's no confusion at all that he violated supervised release by committing a felony drug crime. There's no confusion that he violated supervised release by possessing a controlled substance. And when you combine these uncontested grade B violations with the fact that he absconded from supervision totally, the basis for revocation, I think, is plainly justified. And when you consider that he received a sentence well below the agreed upon advisory guideline range, it's just really hard to conclude looking at all of this and separating sort of the weeds out here, that he received anything other than a fair result and a fair hearing. Now, obviously the defendant wants the court to assume that the district court must have considered every single factual finding she read at the oral hearing in consideration of the sentence because she did not delineate separately which ones she considered. I don't think that makes common sense. You got the very clear delineations here between these grade B and these grade C violations. And I think that it's consistent with common sense that she would be focused on the more serious ones, which were really egregious and uncontested. And I think it was consistent also with what the parties sort of represented to her at the beginning, which was that, hey, we're just trying to help the court out here by focusing on the most serious things. Yeah, look, if we affirm he goes after this date, he gets 12 months, right? Yes. If we don't affirm, is he worried about all these other things are gonna rise up again? Or are they gonna be wiped out? Well, it certainly depends on how this court words the remand. Well, what if we just affirm? What about all these other things that he's done, absconding and stuff? Are those behind him? So with this 12 months, they will be coming back under supervised release. His history isn't very good, but if he makes it for 12 months, these other things are sort of disappearing. Well, the court ordered no additional supervision. So I think the court just wants to be, did wanna fairly consider the fact that he'd already been sentenced for a state revocation sentence on similar conduct. So it was really trying to cut the defendant a break here in terms of the sentence because clearly his conduct was egregious enough. These grade B violations in combination with the fact that he absconded totally and that he was in a different district than he was supposed to be in when he committed the felony drug offense certainly could have warranted a sentence as high as 24 months. I tried to take into consideration his state revocation sentence in my recommendation. The court certainly did the same. I think that the court was trying to address the violations and then be done with the defendant. The court did note though that one of the reasons it was not imposing additional term of supervised release because there was outstanding restitution is because he would still remain on state supervision and that the state could help to perhaps still collect the restitution. So the one remaining issue for the court in terms of possibly supervising him would be restitution but she felt that the state court would adequately, state court supervision would adequately address that. Thank you. Okay, thank you. Mr. Ruth. Thank you. Just two things. First of all, the question of whether he faces a grade A allegation if this case is remanded we have only challenged the sentence. We haven't challenged the revocation. So the way I would look at it is he was accused of certain violations. He admitted to those violations, accepted revocation and then went to sentencing. All the beginning stages I don't think you get, that wouldn't get. Generally though there's no limit on evidence the court can take into account in deciding what an appropriate sentence is for admitted violations, right? Well, she can consider if there's new evidence on the record at a subsequent sentencing hearing she could consider it for sure. But so I'm not asking that this be sent back for a new revocation hearing. We accept the revocation. We're only asking that it be sent back for a new sentencing hearing. And the other topic that I wanted to comment on was the government has said in general, this was a fair sentence. And I get the impression from all three of you that you think that, hey, 12 months in this situation that sounds pretty fair. And I think that's a defendable point of view. I think you could say in the grand scheme of things this is a generally fair sentence. But that's really not the question. The question here is we had factual findings that were erroneous. And if those factual findings contributed to this sentence he didn't get a fair shake. Even though in the grand scheme of things we might think, no, this is generally a fair sentence in someone's individual opinion. That's not the question. Whether it's just in general fair. He didn't get a fair shake if the judge considered facts that weren't in the record. And that's why I think it needs to get remanded. Thank you. All right, thank you, Mr. Ruth. Thanks to both counsel. Mr. Ruth, you have the additional thanks to the court for accepting this appointment. All right, the case is taken under advisement and the court will stand in recess.